# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### AT PIKEVILLE

**CIVIL ACTION NO. 05-4-DLB**

**ORBIE J. JOHNSON**                                                                 **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                               **DEFENDANT**

******************

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff Orbie J. Johnson filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments on May 18, 2001. (Tr. 53-57, 436-40)  Plaintiff, who was 60 years old at the time of the hearing, has a high school education.  She alleges a disability onset date of April 14, 2001, due to osteoporosis with resulting upper body numbness, left mastectomy, back pain, swollen ankles, chronic obstructive pulmonary disease, muscle spasms in her legs, chronic fatigue, insomnia, hearing loss, and dizziness. (Tr. 57)  Her applications were denied initially (tr. 35-39, 442-46) and on reconsideration (tr. 41-44, 448-51).  Plaintiff then requested a hearing before an administrative law judge, which hearing was held on December 2, 2002, in Prestonsburg, Kentucky. (Tr. 452-99) By

written decision dated June 12, 2003, the ALJ ruled that Plaintiff was not under a disability and so was not eligible for DIB or SSI payments. (Tr. 14-26)  This decision was approved by the Appeals Council on December 8, 2004. (Tr. 7-9)

The instant action was filed on January 6, 2005.  It has now culminated in cross motions for summary judgment.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers

2

of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 15)  At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments of osteoarthritis, osteoporosis, left shoulder pathology, and depression. (Tr. 15, 23)  The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 17, 23)

At Step 4, the ALJ found that Plaintiff had the physical residual functional capacity (RFC) to perform a significant range of work at the sedentary exertion level, being able to lift and carry up to fifteen pounds occasionally and ten pounds frequently, with no prolonged walking, standing or sitting; and no pushing or pulling with her left upper extremity. Nonexertionally, she is limited to only infrequent climbing, balancing, stooping, crouching, kneeling or crawling, no reaching overhead with her left arm, and only occasional bending or squatting.  From a mental standpoint, he found her to have only a fair ability to deal with work stress. (Tr. 19-20, 24)  Because Plaintiff's past work as a hospital records clerk was light in exertion, the ALJ determined that, even with her RFC, Plaintiff was unable to perform this past relevant work. (Tr. 20)

The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that, based upon the VE's testimony, Plaintiff has skills of filing,

keyboarding, and medical terminology from her past relevant employment that are transferable to other semi-skilled sedentary work that Plaintiff could perform. Other semi-skilled sedentary work includes hospital admitting clerk and insurance clerk, which the ALJ found exist in significant numbers in the national economy. (Tr. 25)  This conclusion resulted from testimony by a vocational expert ("VE"), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 493-95)

**C.    Analysis**

Plaintiff's sole contention of error on appeal is that the ALJ should have recontacted her treating physician, Dr. Larry Leslie, to determine whether additional information was readily available. In support, Plaintiff notes that the ALJ rejected Dr. Leslie's opinion when he should have, at a minimum, recontacted Dr. Leslie to obtain additional information and to seek clarification. Plaintiff claims that the ALJ's failure in this regard violated the mandatory recontact requirement of 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1).

In response, the Commissioner argues that an ALJ is required to recontact a medical source only when the evidence of record is inadequate to make a disability determination. She submits that the administrative record in this case, with its records from three consultative physicians, diagnostic test results, and opinions from state agency physicians, was sufficiently developed for the ALJ to render an informed decision. The Commissioner argues that the regulation calls for an ALJ to seek additional evidence or clarification from a medical source when the source report contains a conflict or ambiguity that must be resolved, does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques, none

4

of which was the case here.  Alternatively, the Commissioner claims that, even if the ALJ should have recontacted Dr. Leslie, Plaintiff has alleged no prejudice as a result.

The record reflects office notes and treatment records from Dr. Leslie covering the period from June 2001 to June 2002. (Tr. 405-17) His progress notes evidence he saw Plaintiff during this time for general physical complaints related to her diagnoses of arthritis, osteoporosis, depression, and rib fractures. (*Id.*)  No particularized functional limitations or specific restrictions are noted by Dr. Leslie in these progress notes.  Plaintiff's medical file contains two letter reports authored by Dr. Leslie, the first dated July 26, 2001 "to whom it may concern" (tr. 409) and the second dated August 27, 2001, to a life and accident insurer (tr. 407).  Each succinctly states that Plaintiff is "totally and permanently disabled" due to her chest pain, pleurisy, osteoporosis, arthritis and rib fracture.  This medical source information provided by Dr. Leslie was reviewed by the ALJ.  He rejected Dr. Leslie's conclusion that Plaintiff was "totally and permanently disabled," explaining that he did so because

> First, the determination of "disabled is reserved to the commissioner (SSR 96-2p).  Thus, even if Dr. Leslie had vocational training and experience, the ultimate determination is still left to the undersigned in the Commissioner's stead.  Dr. Leslie indicates that the claimant is "house confined" but does not indicate whether this is the result of a physical or mental impairment.  If mental, he has not referred her to a mental health expert.  If physical, he has not indicated the reason for being house confined.  Finally, there is only minimal clinical information in the file to support his conclusion.  Given all of the above I must reject Dr. Leslie's conclusion as unfounded.

(Tr. 20)

> The regulatory section relied upon by Plaintiff provides, in pertinent part: *Recontacting medical sources.*  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information

5

to reach a determination or decision.  To obtain information, we will take the following actions.

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Thus, the ALJ did not give weight to Dr. Leslie's statements because they represented a conclusion on an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  To the extent they are arguably medical source opinions, they were not supported by the doctor's treatment as documented.  The regulation provides that clarification can be sought in various ways, including  "... requesting copies of your medical source's records[.]" 20 C.F.R. § 404.1512(e)(1).  But Dr. Leslie's office records had already been provided and were reviewed by the ALJ.  And Dr. Leslie's two letter reports do not in and of themselves contain a conflict or ambiguity so much as they are simply unsubstantiated by the doctor's own treatment notes and findings.

An ALJ may resolve a conflict between a physician's treatment notes and medical report when the report is not based upon objective medical evidence by discounting the report and relying upon the physician's actual treatment notes.  *Littlepage v. Chater*, 134 F.3d 371, 1998 WL 24999, *3 (6th Cir.)(unpublished table decision).  Moreover, and as argued by the Commissioner, while an ALJ must recontact the appropriate medical source to resolve a conflict, the ALJ must do so only when the record is insufficient to allow the ALJ to make a determination regarding the claimant's disability.  *See* C.F.R. §§

6

404.1512(e), 416.912(e).  If an ALJ can resolve the conflict by relying on information within the record, the ALJ need not recontact the treating physician.  *Id*.

In the instant case the record was sufficiently developed to allow the ALJ to make a determination of whether Plaintiff had impairments that rendered her disabled.  There was ample other medical evidence pertaining to Plaintiff's mental and physical conditions and any limitations therefrom.  In evaluating her physical limitations, the ALJ looked to the consultative examination performed by Dr. Stephen Nutter at the state agency's request. (Tr. 371-77) His findings and the other medical evidence were provided to the non-examining state agency consultants, Drs. James Ross (tr. 378-386) and Gary Higgason (tr. 387-90), who prepared physical RFC assessments, placing significant weight upon Dr. Nutter's findings.  This physical evidence also included a consultative examination performed by Dr. Mark Carter in September 2002 (tr. 418-22), which was subsequent to Dr. Leslie's period of treatment provided in his notes.  His physical assessment based thereon (tr. 423-25) was also relied upon by the ALJ. (Tr. 19-20) And as for limitations from mental impairments, the ALJ looked to the evaluative findings of pyschologist Dr. William Rigby (tr. 351-55) in assessing her mental RFC.  Plaintiff has challenged none of this other evidence, aside from the extent to which Plaintiff believes it would perhaps be trumped by her treating physician Dr. Leslie, had he been recontacted by the ALJ.

The record was sufficiently developed for the ALJ to make findings as to Plaintiff's functional capacity remained despite her diagnoses.  The ALJ had no obligation to recontact Dr. Leslie for clarification or additional information.  None of the factual prerequisites discussed above were present; i.e., there was no conflict or ambiguity to be resolved, and reports were complete and appeared to be based upon acceptable clinical

and laboratory techniques.   Therefore, the ALJ's determination was supported by substantial evidence.

Nor are the authorities Plaintiff relies upon helpful to her cause.  Plaintiff asks the court *not* to rely on *Day v. Shalala*, 23 F.3d 1052 (6th Cir. 1994), where the issue centered around the Ohio Bureau of Disability Determination's duty "under 42 U.S.C. § 423(d)(5)(B) to 'make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence' necessary to making disability determinations[,]" because Plaintiff is not relying on the statute and its requirement.  Plaintiff centers her argument around the unpublished Sixth Circuit case of *Persell v. Secretary of Health & Human Services*, 36 F.3d 1097, 1994 WL 520859 (6th Cir.)(unpublished table decision), where the court acknowledged the language of 20 C.F.R. § 404.1512(e) at issue in the instant case.  However, in *Persell* the court did not address how the language should be interpreted or applied because the language was added by an amendment that was made after the ALJ's findings.

Finally, even if the ALJ erred by failing to contact Dr. Leslie for a clarification or for additional information, any such claimed error was harmless.  When a claimant does not "identify [or] offer to present any additional evidence from Claimant's treating physicians showing that Claimant was disabled during the relevant period" then the error is harmless. *Melton v. Com'r of Social Security*, 178 F.3d 1295, 1999 WL 232700, *5 (6th Cir.)(unpublished table opinion).   Plaintiff did not offer to present any additional evidence from Dr. Leslie identifying any prejudice inflicted by the ALJ's failure to seek a clarification. Therefore, any such claimed error was harmless.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 2nd day of March, 2006.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-4-JohnsonMOO.wpd

9